Case number 19-3554, USA v. Christopher Goodin. Argument not to exceed 15 minutes per side. Mr. Tableman, you may proceed for the appellate. Thank you. Good morning. If it pleases the court, my name is Kenneth P. Tableman. I'm here this morning on behalf of Mr. Christopher Goodin on his direct appeal. I'd like to reserve four minutes for rebuttal, please. All right. I'd like to start really at the end of the case with the district court's afterthought assessment of $5,000 under the Justice for Victims Trafficking Act. And to understand why this was an error that requires the court to send the case back, I need to tell the court a little bit about what was in front of the district court in making that decision. According to the pre-sentence report, which was undisputed, Mr. Goodin was 33 years old. He drank daily and had started drinking at age three. Although the word alcoholic was not used, in my mind what was described was alcoholism. He was drinking a bottle of vodka daily. He lost employment because of his drinking. He had last held employment over 11 months before the date of sentencing. He was a person that had suffered significant childhood traumas. He witnessed violence against his mother as a child. He himself had been in foster care. He had been sexually abused as a child. He had behavior issues which weren't specified. But what was set forth without dispute in the pre-sentence report was that he had serious behavioral he was in classes because of his severe behavioral issues, handicap classes. And he was asked to leave school and left school in the ninth grade. Now this was before the sentencing judge and the pre-sentence report. This was all in the pre-sentence report. It was not, we can't both talk at the same time. He was not, it was not objected. It was not objected to. And, of course, I'm here on behalf of Mr. Gooden on the appeal. I was not trial counsel. I can't speak to why there was no objection. The man had $20 in a checking account, owed $24,000 in child support. He had a verified debt of $1,271. He was being supported by his fiancée. So his argument is that he's indigent and that's why it was not objected to. Well, the law says. But when he'll be released in his 50s, so we can't say that the assessment was clearly erroneous to be found not indigent. I think we can say that. I'm asking you to say that. I'm saying that on this record, first of all, his lawyer said before this assessment was imposed, my client is indigent. The law says the judge has to impose assessment on a person who is not indigent. There's nothing in this record that says that this man will be anything other than seriously impoverished. There's authority for considering what his prospects might be upon his release from imprisonment, correct? Absolutely. And he's a man who had held a job, although not immediately before sentencing. He'd be at age when he's employable, and one would hope, although one can never be sure, that his term of imprisonment might deal with his alcohol problems, might get some mental health counseling. He might emerge substantially more stable and employable than he was prior to sentencing. Your Honor, those are all wonderful hopes and wishes that I share with you from my client. However, I understand that that may not be the reality. I'm just saying that those are probably appropriate things to be considered by the decision maker. Yes, Your Honor. They're very appropriate to consider, and we wish those on all of our clients that are incarcerated, and we know in reality that what do we know, but what do we know at the sentencing in this case? I mean, I reject that standard, first of all, because to say we're going to conjecture in the future that someone is not indigent based on all sorts of things. Well, no, but there's authority to support doing that, isn't there? Well, the Court has published opinions, but even the opinions this Court has published, we're bound by them, but even those opinions are distinguishable in this particular case. In every single one of those cases, the restitution award was significantly less than the award in this case. The award in this case was $155,000. That's something that has to be paid. Which comes first, though? Restitution does. It comes ahead of the JTDS. It does. So that's got to be considered. Is there a reg or something that says that? I mean, maybe I was just wrong, but if I read it, I read it the other way. Well, I may be mistaken, but the way I read it was the restitution comes first. Based on what, a case? Based on, there's a, I'll have to fumble my papers here, but I think the statute says so. The justice for victims of trafficking. Usually the government comes ahead of private people, but maybe that was just my assumption. It's not absolutely critical, although that's a much stronger argument than your others, perhaps. But on the other hand, then what harm, what foul does he get? He doesn't get re-imprisoned for failing to pay the JTVA if it doesn't come first. Maybe there is no harm. To answer your first question, 3014 subsection B says, shall not be payable until the person is satisfied all outstanding court orders, fines, orders of restitution, and other obligations. 3014 B? Yes, Your Honor. Okay, thank you. So what harm, what foul? I guess I leave that to the court to decide, but it was not done correctly, and I think we can say from the record that when counsel says my client's indigent, and the statute says you have to determine whether or not the person is non-indigent, that the court should do that. And it wasn't done here. It's an afterthought, complete afterthought. The sentencing is concluded. The government attorney says, oh, by the way, there's this matter of the assessment. It's even confusing when you look at the transcript. At first the judge seems to think he's not going to order it. Then he says he is. But there's absolutely no fining on that. So that's my issue regarding that aspect of the case. Turning to the restitution award, it won't be a surprise to the panel since it's in my briefs that I disagree with how the district court handled the matter of restitution. Again, there was no objection in the district court. But I do think this court has an obligation to make district judges follow the rules and do it right. We're talking about something that's going to have an impact on a real person that's going to have to pay money back. And this is something that carries with them once they're out of prison. And to just rubber stamp what's in the precedence report I think is wrong. And the way the restitution was presented, if you look at the supplement to the precedence report, all the probation officer did was say these victims have made these claims and this is the amount of their claims. But if you look at the claims and what they consist of, they do not follow in any meaningful way the factors that the Supreme Court set out in Paroline. Number of past offenders to contribute to the victim's general losses. How many offenders are there going to be in the future that can contribute and how many of them are going to be caught? What's the total universe of all the offenders that have these images? Did this defendant reproduce or distribute these images? He did not. How many images did the defendant have? Other facts relevant to their causal role? And now these are not hard and fast guidelines. But this problem of how to determine restitution when someone has possessed an image of someone is not a new problem. It's a matter that was discussed by the Supreme Court. And I just think it's wrong, plainly wrong, to just rubber stamp what the probation officer said, particularly when upon inspection all you have are self-serving declarations that I'm going to have $500,000 or $1 million of damages going to the future and I want you to order this person. The real problem with this argument is that it's plenary review, correct? I wish it were not plenary review. That is a problem. But I think the court has jurisdiction to consider this and I think the court should give some guidance to district courts on how to approach these matters which recur and recur and recur. Well, I guess, you know, whatever we did ultimately, I suppose that we could attempt to say what the district court should have done if we chose to do that. Would that be helpful? It may not help Mr. Gooden, but it would help those in the future. And I'm not going to concede that the court couldn't help Mr. Gooden. I understand. So that's, it grates on me and I think should grate on the court to have orders entered with real consequences that are not appropriate. No one's denying that victims shouldn't get compensation, but when there's a clear methodology set forth and there's no reason, discussion by the district court about why the district court decided to do what it did, I just don't think that's appropriate. I was looking for the pre-sentence report which unfortunately is not in the file I have on the bench. I have a copy here if you need it. I have a copy if you need it. Can I look at it? That's the first 70 pages of it. I just wanted to look at the listing which is at the end. Would that be right? It's toward the end. I think we're paragraph 105 on page 25, page ID 190. Page what? Page ID number 190 which is page number 25 of the report. Page number 25. Okay. Thank you. Well, we would know that these amounts do not represent, certainly not the total number of victims here because this isn't the, my understanding of the facts would mean that this was not, could not be an amount of restitution requested for each person individually might be considered a victim. Is that right? Right. These are the known identifiable victims. I see my time has run out now. I was waiting for your time to run while I was perusing the pre-sentence report, Mr. Teitelman. That's fine. Thank you. Good morning. Good morning. May it please the court, James Ewing for the United States. Mr. Gooden preyed on two children ages 12 and 14 and convinced them to produce child pornography of themselves and send them to him. He also had the equivalent of thousands of images of egregious child pornography, including sexual abuse of infants and toddlers, bestiality, and some of the most egregious images that you can imagine. Federal law mandated that the district court impose restitution and the $5,000 special assessment in this case, and the court certainly did not err, much less plainly err in so doing. I'll turn, since we were talking about it last, I'll turn to the question of restitution first. 18 U.S.C. 2259 mandated restitution in this case to the 13 identified victims, and of course my colleague was correct. Those are the 13 identified victims that were identified by the National Center for Missing and Exploited Children. There were thousands or at least hundreds of victims in this case, including a number that were obviously not identified. The pre-sentence report calculated the loss amount as just over $150,000, and Gooden did not object to that amount. And if we look at cases from this court, like Sexton, and I point you to page 801 of Sexton, and Scudder, page 460 of Scudder, both of these, Sexton was a reported case from 2018, Scudder was unreported, but both stand for the same proposition that when the pre-sentence report sets forth a precise amount for restitution and there's no objection, then the district court does not err by simply adopting the pre-sentence report. Scudder said the PSR also recommended a specific restitution amount. There was $425,030. Of course then on appeal, Scudder challenges that amount, but this court said any objection to these findings should have been made at sentencing. Because Scudder failed to object, the district court was entitled to rely on the PSR. Mr. Ewing, I have now found the pre-sentence report, which I do indeed have, it just wasn't in the file, it was in my notebook, but had there been an objection, what's your position as to what the district court would have been required to do? Well, Your Honor, had there been an objection, then the district court should have considered regarding restitution under the Paroline factors, or under the Paroline case. And the outcome here is really determined by the fact, or may be determined, by the fact we're reviewing for plain error, correct? Well, it's certainly a plain error case and we think that's the easy answer to the case. But we think that even if this were a preserved error case, if you look at the 500 plus pages that these 13 victims presented to the court, 10 of the 13 of them cite the Paroline case. And what Paroline stands for, Paroline stands for the professor. Of course, Paroline came to the Supreme Court not as a plain error case, but when the district court out in the Fifth Circuit had found that in a child pornography case, that there was no restitution owed because they couldn't find a causal nexus between Paroline's possession of the images and any damages. The Fifth Circuit en banc disagreed and found joint and several liability, and found that Paroline was responsible for $3.4 million. The Supreme Court essentially disagreed with both. And they crafted a middle ground where they said, you know, it's an apportioned amount in recognition that the defendant is one of many pedophiles who possess the images. And that's what this was. If you look at the... So that's why you could say that this amount would represent only a fraction of the overall harm that was done, a small fraction of the overall harm that was done, if you consider the number of images and the number of victims, the victims being the children who were portrayed in these images. That's right. Is that... Yes. Have I got that right? That's right. And if you look at just an example of the individual, the known victim, who goes by the moniker Maureen, and I'm looking at page ID 753, Maureen talks about her overall damages being on the order of $192,000. She's asking for $10,000 from Gooden. So this is the type of thing that Paroline was describing. So, again, we don't think you need to get into this argument, but we think that it's not the $150,000 didn't fall out of the sky. There was a rational basis for it, and it was the aggregate total of these, and it's on page 26 of our brief. We have a table that has each known victim's overall loss amount and what they're asking for for Gooden. And if you look at it, the loss amounts are, a lot of them are in the hundreds of thousands, and they're asking Gooden for $5,000, $10,000, that sort of thing. So there was a basis for that number. It didn't just kind of come out of nowhere. But, again, we bring you back to Scudder, we bring you back to Sexton, and it goes to the overall concept from cases like McGee, where if there's a fact in the pre-sentence report, and that fact is not challenged or not controverted, then the district court doesn't err by simply relying on that fact. And so that's what the district court did here. We certainly couldn't say somehow that it was plainly erroneous, or clearly and obviously erroneous, in the absence of an objection, to rely on this figure that was in the pre-sentence report. Sexton involved a restitution amount of over $2.6 million. Scudder was $425,000. So if it's in the pre-sentence report and it's not objected to, the district court judge does not err by relying on that number. Turn to the $5,000 special assessment issue. First, it's important to understand the intent behind that $5,000 special assessment. It's called the Justice for Victims of Trafficking Act. And the idea behind that, it goes into a fund. And that fund is used for all the unknown victims. So the hundreds of unknown victims who maybe 10 years, 15 years from now, 20 years from now, end up coming forward and realize, hey, this happened to me, there's images of me on the internet. And so that's a way, of course, we know 13 of the victims, so we can order restitution as to those. The $5,000 special assessment is for all these folks who we don't even know who they are yet. So that's the idea behind that. Now regarding indigency, we think that this court's decision in WandaSega controls this case. Gooden owed an aggregate of about $26,000 in debts at sentencing. WandaSega owed $30,000. Gooden had had a prior job as a mechanic making $3,000 a month at one point. He had another job where he was making $17 an hour. He had a number of jobs, including working at the foundry, I believe it was in Elyria, Ohio. WandaSega had never made more than $10 an hour in his life. So if you look at, and this court found that WandaSega was not indigent for the purposes of this $5,000 special assessment. So certainly we would argue it's not error at all, much less clear and obvious error in light of WandaSega to hold that Gooden was not indigent. Is your colleague correct that the JVTA comes after restitution? I think that's accurate, Your Honor. The main reason I say, I mean, the 3014 seems to say that. The other reason I tend to agree with that is the JTVA by its terms says you have 20 years after you get out of prison to pay it. So WandaSega would have a total of, or excuse me, Mr. Gooden would have a total of 45 years. So it's 25 years of incarceration plus 20 additional years. The restitution amount becomes due on the day that he leaves prison. So you certainly need to consider the restitution amount. This court did so in the Shepard case, which was a published opinion in 2019. I had not thought that through, although it would seem that if you ever tried to collect the fact that he had been able to pay the restitution somewhere out in the future would be a sign that he wasn't indigent. Well, the restitution regulation, of course, the 2259 says you don't look at whether the defendant is indigent or not. I think this is all hypothetical, but I just didn't know if the indigency, any discussion of the JVTA indigency looked at the interaction with restitution. It doesn't. I mean, this court did so, again, in the Shepard case, where Shepard had a $25,000 restitution order and a $30,000 child support order. So Shepard was in the hole for $55,000 before he started, and this court did consider it in that regard. Even if you look at the, so now we're... When you say they considered it, what was the outcome? Well, they said that Shepard was not indigent for the purposes of the $5,000. I would like to address, too, my colleague's comment about Mr. Gooden's trial attorney saying that he was indigent at sentencing. That was in reference to whether his trial attorney, by the way, was retained. And that comment was in regards to whether he needed appointed counsel for appeal. So, of course, that's not a claim that he was indigent for these purposes, because we know from Juan de Sega that the standard is you look at the person's monetary situation at sentencing and also their ability or inability moving forward to make money. So, again, this is someone who was a mechanic making $3,000 a month at one point. He had a series of other jobs, including one making $17 an hour. If he paid roughly $7,700 a year for the 20 years once he gets out of prison, he would pay off both the restitution and the special assessment. And also we would note that the special assessment should have been $15,000, because it should have been $5,000 per count. And the First Circuit addressed that in a case called Johnson last month, that it's actually per count. So he got $10,000 less special assessment than he should have. This is someone who had a Galaxy S8 cell phone, a ZTE cell phone, an Acer laptop, and an HP laptop in his residence. So this is not someone who, particularly in light of this court's decision in Juan de Sega, should be considered indigent for the purposes of this important special assessment. I know there's a couple of issues in the appeal that we haven't discussed this morning. I'm happy to answer any questions about those or any other questions about any aspect of the case. Thank you very much. If there are no further questions, we would ask that you affirm the district court. In this case, on the restitution, I contend the district court simply adopted what was in the pre-sentence report. And if you look at the pre-sentence report and you look at the underlying documents and you look at the table in my colleague's brief, it's not in any way in conformity with what the Supreme Court suggested the court should do in the Paroline decision. If the provision of the pre-sentence report, such as the restitution amounts, is not objected to, then the district court's free to adopt that. It's essentially like any finding of fact within the pre-sentence report, correct? It's better if there's an objection, certainly, to present the issue to the court. I still maintain the district court has an overriding obligation to do justice in each case, and this is an injustice. Well, you know, the role of the defense lawyer is to advise the court if there's incorrect information in the pre-sentence report. I mean, I know you were not trial counsel, but district courts can't ferret out every error on their own. They don't have independent investigative authority. No, they can't. But this is a recurring issue in child pornography cases. In this particular case, you can look at what happened here on page 20, document 32, page 26 of my client's brief. Victim, Tara, claimed losses, 18,136.40, restitution request, 18,136.40. There's nothing that she wants 100% of her loss from my client, and it was awarded. On its face, that can't be so. She's a person that's identified by a Center for Missing and Exploited Children. There have to have been. She can't be the only one. My client can't have been the only one that ever possessed that image. Facially, that's wrong. And the whole thing here speaks of that type of error. So I sympathize with the district court. It's a difficult job. Counsel's supposed to help the court. The ultimate responsibility, in my mind, is for the court to do justice. This was not a correct result. The court's on notice from the Paroline case. The government's on notice. There's no statement in any of the government's pleadings about how many other offenders were there, how many other wards were there. These numbers are picked out of thin air. And it's not that huge a burden to say. There have been 50 other wards of $5,000 each or 1,000 other offenders or whatever those numbers are. Those statistics and figures are within the reach of the government far more so than the defendant. For those reasons, I submit that this does amount to plain error. And for the reasons set forth in my reply brief, the Wanda Saga case is highly distinguishable. And I respectfully suggest that an alcoholic, unlicensed mechanic with no work history, who hasn't worked for a year, was presently impoverished. And it's pure speculation to think that 20 years from now, 25 years from now, he gets out of prison and may be able to satisfy a restitution award of more than six figures that he can then pay the $5,000 or the $15,000. So for those reasons, I respectfully request the court vacate the judgment of the district court amendment case for this instance. Thank you. Thank you. And the case is submitted. Mr. Stableman, the court recognizes that you took this case under the Criminal Justice Act and you do that as a service to the court, so we very much appreciate it. Thank you. Thank you.